VIRGINIA:   IN THE CIRCUIT COURT FOR PATRICK COUNTY

TYLER SPENCER,

    *Plaintiff*

v.                                                                                            Case No. CL 21-32
                                                                                                                            JURY TRIAL DEMANDED

TURNER FURNITURE HOLDING CORP.
d/b/a/ ASHLEY FURNITURE HOMESTORE
and/or d/b/a/ ASHLEY FURNITURE INDUSTRIES

    Serve: S. Russell Turner, Jr.
            317 Industrial Boulevard
             Thomasville, GA 31792

TURNER FURNITURE OF NORTH CAROLINA, LLC

    Serve: Registered Agent Solutions, Inc.
             7288 Hanover Green Drive
             Mechanicsville, VA 23111

ASHLEY DISTRIBUTION SERVICES HOLDINGS, INC.

    Serve: Corporation Service Company
             100 Shockoe Slip, Floor 2
             Richmond, VA, 23219 - 4100, USA

ASHLEY DISTRIBUTION SERVICES, LTD.

    Serve: Corporation Service Company
             100 Shockoe Slip, Floor 2
             Richmond, VA, 23219 - 4100, USA

ASHLEY HOMESTORES, LTD.

    Serve: Corporation Service Company
             100 Shockoe Slip, Floor 2
             Richmond, VA, 23219 - 4100, USA

ASHLEY HOMESTORES HOLDINGS, INC.

EXHIBIT A

       Serve: Corporation Service Company
            100 Shockoe Slip, Floor 2
           Richmond, VA, 23219 - 4100, USA

**PHIL RELEFORD**

    Serve: Secretary of the Commonwealth of Virginia

**BURNICE PARKER**

    Serve: Secretary of the Commonwealth of Virginia

*Defendants.*

## COMPLAINT

COMES NOW the Plaintiff, Tyler Spencer, by counsel, and demands judgment against all Defendants, jointly and severally, on the grounds alleged below, upon information and belief:

### Parties

1. Tyler Spencer is a resident of Patrick County, Virginia.

2. Defendant Turner Furniture Holding Corp. is engaged in the business of, among other things, selling and delivering furniture.

3. Defendant Turner Furniture of North Carolina, LLC is engaged in the business of, among other things, selling and delivering furniture.

4. Defendant Ashley Distribution Services Holdings, Inc. is engaged in the business of, among other things, selling and delivering furniture.

5. Defendant Ashley Distribution Services, Ltd. is engaged in the business of, among other things, selling and delivering furniture.

6. Defendant Ashley Homestores Ltd. is engaged in the business of, among other things, selling and delivering furniture.

7. Defendant Ashley Homestores Holdings, Inc. is engaged in the business of, among other things, selling and delivering furniture.

8. Defendant Releford was, at all times relevant hereto, an employee, agent, and/or apparent agent of Defendants Turner Furniture Holding Corp., Turner Furniture of North Carolina, LLC, Ashley Distribution Services Holdings, Inc., Ashley Distribution Services Ltd., Ashley Homestores, Ltd., and/or Ashley Homestores Holdings, Inc., acting within the course and scope of his employment, agency, or apparent agency.

9. Defendant Parker was, at all times relevant hereto, an employee, agent, and/or apparent agent of Defendants Turner Furniture Holding Corp., Turner Furniture of North Carolina, LLC, Ashley Distribution Services Holdings, Inc., Ashley Distribution Services Ltd., Ashley Homestores, Ltd., and/or Ashley Homestores Holdings, Inc., acting within the course and scope of his employment, agency, or apparent agency.

10. Defendants Turner Furniture Holding Corp., Turner Furniture of North Carolina, LLC, Ashley Distribution Services Holdings, Inc., Ashley Distribution Services Ltd., Ashley Homestores, Ltd., and/or Ashley Homestores Holdings, Inc., are vicariously liable for the tortious acts and omissions of Defendants Releford and Parker, as well as for the tortious acts and omissions of all of their other agents and employees who proximately caused the events described herein.

## Jurisdiction and Venue

11. Venue is proper in this Court because the negligent acts and omissions of the Defendants occurred and caused tortious injury in Patrick County, Virginia.

12. This Court may exercise personal jurisdiction over these Defendants because this action arises out of their conduct within the Commonwealth of Virginia and/or their purposeful availment of the Commonwealth of Virginia.

### Background Facts

13. On May 20, 2020, Tyler Spencer was twenty years old. He lived in a house with his grandparents and fiancé off of Pilson Sawmill Road in Patrick County, Virginia.

14. On the morning of the 20th, Tyler Spencer's aunt, who also lives on the same driveway off of Pilson Sawmill Road, had informed Tyler Spencer's grandmother that she was expecting a furniture delivery from Ashley Furniture.

15. Around 9:30 a.m., Tyler Spencer's grandmother looked out her front window and saw the Ashley Furniture truck.

16. The Ashley Furniture truck was being driven by Defendant Releford. Defendant Parker was in the passenger seat, acting as helper and spotter.

17. At that time, it was raining hard, and the shared driveway to access Tyler Spencer's residence and Tyler Spencer's aunt's house off of Pilson Sawmill Road is unpaved.

18. The driveway branches off of Pilson Sawmill Road and proceeds uphill past Tyler Spencer's residence to Tyler Spencer's aunt's house. *See* Photos 1 and 2.

VALIDATE CASE PAPERS
RCPT : 21000000259
DATE : 01/13/2021 TIME: 14:28
CASE : 141CL21000034-00
ACCT : SPENCER, TYLER
AMT. : $344.00



(Photo 1 - looking downhill towards Pilson Sawmill Road, with Tyler Spencer's residence on right behind shed)



(Photo 2 – looking uphill towards Tyler Spencer's aunt's house, with Tyler Spencer's residence out of frame on left)

19. The Ashley Furniture truck was attempting to back up the driveway to Tyler Spencer's aunt's house.

20. As the Ashley Furniture truck attempted to back up the driveway to Tyler Spencer's aunt's house, it began losing traction and spinning its tires.

21. Unsuccessful in its attempt to back up the driveway from Pilson Sawmill Road, the Ashley Furniture truck drove forward to the beginning of Pilson Sawmill Road and turned around so that it was facing up the driveway to Tyler Spencer's aunt's house.

22. The truck accelerated rapidly in order to build up momentum to carry it up the hill to Tyler Spencer's aunt's house.

23. The truck made it to Tyler Spencer's aunt's house and parked in her driveway.

24. Releford and Parker delivered the furniture – a single table – to Tyler Spencer's aunt.

25. When the delivery was complete, Tyler Spencer's aunt believed that the driver would turn the Ashley truck around in her driveway so that the truck could drive forwards down the driveway to Pilson Sawmill Road. She therefore moved one of her cars to make room for the truck to turn around and was planning to move the other.

26. However, after moving her first vehicle, she saw that the Ashley truck was already backing down the unpaved driveway, toward Tyler Spencer's residence.

27. Based on their training and experience, as well as their unsuccessful experience in trying to drive in reverse up the driveway before delivering the furniture, Releford and Parker knew or should have known that the road was too slippery, narrow, muddy, and otherwise hazardous to attempt to reverse down such a muddy, narrow decline.

28. Releford and Parker knew or should have known that a truck's steering and handling are safer and more controlled when driving forwards and steering with the front wheels as opposed to driving in reverse.

29. Releford and Parker knew or should have known that due to the grade of the driveway, the weather conditions, and the conditions of the road they would have to make extensive use of the brakes while headed backwards down the driveway, thus increasing the risk of skidding and loss of control.

30. Releford and Parker knew or should have known that, when attempting a maneuver like the one they were anticipating, they should use a spotter or flagman to assist the driver.

31. Rather than act as a spotter to assist the driver in navigating the narrow, muddy unpaved driveway, Defendant Parker remained in the passenger seat.

32. As Releford backed the truck down the roadway, the truck tires once again began spinning and the truck began sliding. The driver was working the brakes, resulting in the truck spinning and sliding even more.

33. Instead of stopping, Releford and Parker continued backing down the driveway toward Pilson Sawmill Road, with their truck pinballing back and forth in the driveway.

34. The truck eventually slid off the roadway in front of Tyler Spencer's residence, becoming stuck in a position in which the truck was in danger of tipping to the side and damaging property. *See* Photo 3.



(Photo 3)

35. Upon information and belief, Releford and/or Parker were professional drivers and/or had otherwise received specialized training in the operation, control, and management of large delivery vehicles like the Ashley Furniture truck.

36. As professional drivers and deliverymen, Releford and Parker had received specialized training and instructions on how to safely handle a situation where their truck became stuck.

37. Releford and Parker knew that in order to avoid injury to both person and property they needed to contact a professional salvage and towing company with proper equipment for salvaging and towing commercial vehicles like the Ashley truck.

38. Upon information and belief, Releford and/or Parker had previously utilized professional salvage and towing companies when their Ashley Furniture truck became stuck.

{00718077-2}          8

39. The equipment used by such professional salvage and towing companies is specifically designed and maintained for situations like this, where a large commercial vehicle is stuck in a precarious, dangerous position.

40. The risks posed by improper and unprofessional salvage attempts were especially acute on the day in question due to the weather and roadway conditions and the topography of the driveway.

41. When the Ashley truck came to rest, listing precariously towards its passenger side in the direction of vehicles and other personal property located on the property, Tyler Spencer and others approached the cab of the truck and spoke with the driver.

42. The driver and the others discussed ways to try to get the truck back on the road. In the course of conversation, the possibility that the Pilson Sawmill at the bottom of the road might be able to assist was raised. Defendants Releford and Parker responded favorably to that idea and requested that someone from Tyler's family seek assistance from the sawmill.

43. Releford and Parker, with their superior knowledge and training, knew or should have known that this was not the appropriate course of action and that using inappropriate equipment operated by someone who is not a salvage and towing professional would create significant risk of injury to person and property.

44. Nevertheless, Releford and/or Parker wanted to recruit help from Pilson Sawmill and requested that Tyler Spencer and his family do so.

45. Tyler Spencer and his grandfather therefore drove to the sawmill to seek assistance. The sawmill's operator agreed to send a piece of equipment up the road to help.

46. Tyler Spencer and his grandfather returned to the Ashley truck and told Releford and Parker that, per their request, the sawmill was sending a piece of equipment to help.

47. Releford and Parker knew or should have known that the piece of sawmill equipment was not designed and maintained for towing purposes, and that the sawmill employee driver was not a professional in the field of commercial vehicle salvage and towing.

48. Releford and Parker further knew or should have known that Tyler Spencer and his family had no training or experience in commercial vehicle salvage and towing, but instead were merely concerned property owners trying to get the Ashley truck off of their property because it presented a danger to their property, including a parked vehicle adjacent to the truck, and it was blocking ingress and egress to Tyler Spencer's aunt's house, where the furniture had been delivered.

49. Upon arrival, the equipment operator first attempted to use the forks of his loader to lift the rear, downhill end of the truck back into the roadway, but was unable to do so. He therefore decided to attempt to pull the truck out from the front.

50. Tyler Spencer informed Releford and Parker that the equipment operator would attempt to pull him out from the front.

51. The Releford and Parker agreed with this course of action.

52. Releford participated in this course of action by remaining at the driver's wheel in anticipation of getting pulled forward so that he could steer and control his vehicle.

53. Parker did not alight from the truck to act as a helper or spotter for this procedure, but rather remained in the passenger seat.

54. Tyler Spencer was between the front of the Ashley truck and the rear of the sawmill equipment, holding the chain that was to be used to attempt to pull the Ashley truck forward.

55. The piece of sawmill equipment rolled backward, crushing Tyler Spencer between the equipment and the Ashley truck, causing extreme injuries as alleged herein.

## Count 1 – Negligence of all Defendants

56. All preceding allegations are incorporated herein by reference.

57. Defendants had a duty to exercise reasonable care in the operation and control of the Ashley truck.

58. At all times relevant hereto, Defendants were negligent in the operation and control of the Ashley truck.

59. Defendants knew or should have known that others, including Plaintiff, were persons who were at risk of harm or injury resulting from their negligent acts and omissions.

60. Defendants' negligence created a recognizable risk of harm to others, including Plaintiff.

61. As a direct and proximate result of said negligence, Plaintiff suffered extreme and debilitating injuries as alleged herein.

## Count 2 – Willful and Wanton Negligence of Defendants

62. All preceding allegations are incorporated herein by reference.

63. The entity Defendants hold themselves out as professionals in the field of delivery. They knew or should have known of the need to instruct their employees and agents on the proper course of conduct when a large delivery truck gets stuck or disabled.

64. Defendants Releford and Parker were professional drivers who had received specialized safety training regarding the proper action when their commercial vehicle became stuck or disabled.

65. That training required that they call for a professional salvage and towing company to come to their assistance.

66. Defendants knew that the reason for this course of action was to prevent injury to person and property.

67. Defendants knew that failing to use a professional tow and salvage provider created a significant risk of injury to others.

68. Defendants had previously used professional towing and salvage companies when their truck became stuck or disabled.

69. On this instance, however, Defendants declined to call a professional salvage and towing company.

70. Defendants' failure to do so was not due to lack of ability, but rather was due to their own personal convenience and desires.

71. Defendants made a conscious decision to place their own convenience and interests over the health and well-being of others, including Plaintiff.

72. Defendants knew, based on the conditions existing at the time and their experience with the road conditions, that failing to use a qualified salvage and towing company with appropriate equipment would create a significant risk of probable injury to property and person.

73. By enlisting Plaintiff's help with the salvage operation, despite their superior knowledge of the risks attendant to the endeavor, Defendants placed Plaintiff at great peril for their own benefit.

74. Defendants therefore acted in conscious disregard of the rights of another.

75. Defendants acted with reckless indifference to the risks that they were aware, due to their knowledge of the existing conditions, would probably result from their conduct and cause injury to another.

76. As a direct and proximate result of Defendants' willful and wanton negligence, Plaintiff suffered severe and debilitating injuries as described herein.

## Damages

77. At the time of this incident, Plaintiff was twenty years old. He worked in hardwood floor manufacturing. He was engaged to be married and helped care for his fiance's minor child.

78. As a result of this incident, Plaintiff was crushed between two large vehicles.

79. Tyler Spencer suffered traumatic injury to the right leg resulting in amputation at the hip joint. He suffered traumatic retroperitoneal hematoma, closed fracture of the lumbar spine, multiple fractures of the pelvis with unstable disruption of the pelvic ring, colonic injury, thrombocytopenia, traumatic iliac artery occlusion bilaterally, leukopenia, acute blood loss anemia due to trauma, right hip laceration, hemorrhagic shock, compartment syndrome, and bowel resection.

80. Tyler Spencer has limited range of motion and grip strength in his hands and paresthesia. He uses a rolling walker, electric wheelchair and a manual wheelchair for mobility. Tyler Spencer required a colostomy for many months after the injury.

81. As a result of these injuries, Tyler Spencer has incurred and will continue to incur substantial medical expenses and will require significant future medical treatment and care.

82. As a result of these injuries, Tyler Spencer has suffered and will continue to suffer loss of income and earning capacity.

83. As a result of these injuries, Tyler Spencer has suffered significant pain, suffering, inconvenience, disfigurement, embarrassment, worry, mental anguish, and loss of enjoyment of life, and will continue to suffer such losses for the remainder of his life.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in the amount of $9,000,000.00 (Nine Million Dollars), together with prejudgment interest from May 20, 2020 and his costs in this behalf expended.

PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted,
TYLER SPENCER
By Counsel

_____
Lee Livingston, Esquire (VSB No. 35747)
E. Kyle McNew, Esquire (VSB No. 73210)
Anthony T. Greene, Esquire (VSB No. 95800)
MichieHamlett PLLC
310 4th Street NE, 2nd Floor
Post Office Box 298
Charlottesville, VA 22901
(434) 951-7200
(434) 951-7256 Facsimile
llivingston@michiehamlett.com
kmcnew@michiehamlett.com
tgreene@michiehamlett.com

Philip G. Gardner, Esquire (VSB No. 12951)
Gardner, Barrow & Sharpe, PC
231 E. Church Street
Fourth Floor – Fidelity Bank Building
Martinsville, VA 24112
(276) 638-2455
(276) 638-2458 Facsimile
phil@ggbslawfirm.com

*Counsel for Plaintiff*