CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
OCT 15 2021
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Danville Division)

| | |
|---|---|
| TYLER SPENCER         ) | |
|     Plaintiff,        ) | |
|                       ) | |
| v.                    ) | Civil Action No 4:21-cv-00020-RSB |
|                       ) | |
| TURNER FURNITURE HOLDING ) | |
| CORP. d/b/a ASHLEY FURNITURE, ) | |
| HOMESTORE and/or d/b/a ) | |
| ASHLEY FURNITURE INDUSTRIES, ) | |
| ET AL,                ) | |
|     Defendants.       ) | |

## MEMORANDUM OPINION

Before me is the joint Motion to Dismiss of defendants Turner Furniture Holding Corp., d/b/a/ Ashley Furniture Homestore ("Ashley Furniture"), Phil Releford ("Releford"), and Burnice Parker ("Parker").[1] Dkt. 12. Because the Complaint alleges that the employee defendants negligently agreed to and participated in the events which led to the injuries of the plaintiff, Tyler Spencer ("Spencer"), I deny the Motion to Dismiss.[2]

### I.   Alleged Factual Background

On May 20, 2020 around 9:30 a.m., Ashley Furniture made a furniture delivery to Spencer's aunt, with Releford driving the delivery truck and Parker acting "as helper and spotter." Compl. ¶¶ 13-16, Dkt. 1-1. Spencer's house shares an unpaved driveway with his aunt's

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[2] Also before me is the defendants' Motion for Leave to Incorporate Demurrer into Case File and Convert Demurrer into a Rule 12(b)(6) Motion to Dismiss. Dkt. 14. Defendants maintain that they timely filed a demurrer in state court before this action was removed, although the demurrer was not part of the record the clerk received from state court. Plaintiff received a copy of the demurrer and does not oppose incorporating it as timely filed. Thus, defendants' motion is unopposed. Accordingly, I grant the motion to the extent that the pending Rule 12(b)(6) Motion to Dismiss shall be considered timely filed.

residence off Pilson Sawmill Road. Id. at ¶ 17. It was "raining hard" when the truck arrived, leaving the driveway muddy and slick. Initially, Releford attempted to back up the driveway, but the truck lost traction and the tires began to spin. Id. at ¶¶ 17–20. Releford then turned the truck around and "accelerated rapidly" forward up the driveway, making it to the house and delivering the furniture. Id. at ¶¶ 21–24.

Upon leaving, Releford attempted to back down the driveway, even though both Releford and Parker knew or should have known the driveway was too slippery, narrow, and hazardous to navigate in reverse, with a high risk of skidding and losing control. Id. at ¶¶ 27–29. As the truck backed down the driveway, the tires starting spinning and the truck began sliding. Releford and Parker nevertheless persisted, without using a spotter or flagman to assist the driver, "pinballing back and forth" until the truck slid off the roadway in front of Spencer's house and became stuck, "listing precariously." Id. at ¶¶ 30–34, 41.

Spencer and some of his family members approached the truck to offer assistance and the group discussed "ways to get the truck back on the road." Id. at ¶¶ 41, 42. Someone suggested asking workers at nearby Pilson Sawmill to assist and "Releford and Parker responded favorably to that idea and requested that someone from Spencer's family seek assistance from the sawmill." Id. The Complaint alleges that Releford and Parker, as professional drivers and deliverymen, had received specialized training and instructions on how to safely handle a situation where their truck is stuck, and knew that to avoid injury they "needed to contact a professional salvage and towing company" with the proper equipment. Id. at ¶¶ 36–37. Despite this, Releford and Parker did not call a professional salvage company, but instead wanted to ask Pilson Sawmill for help and "requested that Tyler Spencer and his family do so." Id. at ¶¶ 43–45. At first, the equipment operator who arrived from Pilson Sawmill tried to lift the rear end of the

truck back onto the roadway but was unsuccessful. Next, the group, including Releford and Parker, agreed on a plan for the equipment operator to try to pull the truck back onto the roadway from the front end, with Releford "remaining at the driver's wheel in anticipation of getting pulled forward so that he could steer and control his vehicle." Id. at ¶¶ 50–52. Spencer stood between the truck and the sawmill equipment, holding the chain that they would use to pull the truck forward; however, the sawmill equipment rolled backward, crushing Spencer against the Ashley Furniture truck, and causing "extreme injuries." Id. at ¶¶ at 54-55.

Spencer brings claims against Releford, Parker, and their employer Ashley Furniture for negligence in count one and willful and wanton negligence in count two. As to negligence, Spencer alleges that defendants had a duty to use reasonable care in the operation and control of the Ashley Furniture truck, that they knew or reasonably should have known that others, including Spencer, were at risk of injury because of their negligence, and that their negligence created an unreasonable risk of injury to others. Id. at ¶¶ 57–61.

As to willful and wanton negligence, Spencer alleges that Releford and Parker were professionals in the field of delivery and had received specialized training on the proper course of action whenever their vehicle became stuck. Id. at ¶¶ 65–66. Defendants knew, Spencer asserts, that failing to use a professional tow and salvage operator to free the Ashley Furniture truck created an unreasonable risk of harm to others, but they still declined to call a professional salvage vehicle for assistance in conscious disregard of the rights of others. Id. at ¶¶ 69–75.

**II.    Law and Analysis**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must take the allegations in the complaint as true, and all reasonable inferences shall be drawn in the plaintiff's favor. King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. at 214.

Under Virginia law, a plaintiff may establish a negligence claim by showing (1) a legal duty, (2) a breach or violation of that duty, and (3) proximate causation resulting in injury. Atrium Unit Owners Ass'n v. King, 585 S.E.2d 545, 548 (Va. 2003); see also RGR, LLC v. Settle, 764 S.E.2d 8, 16–17 (Va. 2014) (noting that, "General negligence principles require a person to exercise due care to avoid injuring others") (citation omitted). This general duty to exercise due care is "owed to those within reach of a defendant's conduct." Id. at 17 (noting that, "[W]henever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or the property of the other, a duty arises to use ordinary care and skill to avoid such injury.") (citation omitted).

Of course, "[t]he threshold question in any tort action is whether the defendant owed a legal duty to the plaintiff." Cline v. Commonwealth, No. 151037, 2016 WL 4721393, at *1 (Va. Sept. 8, 2016) quoting VanBuren v. Grubb, 733 S.E.2d 919, 924 (Va. 2012) (dissent); see also Quisenberry v. Huntington Ingalls Inc., 818 S.E.2d 805, 809 (Va. 2018) (emphasizing that, "The finding of a legal duty is a prerequisite to a finding of negligence") (internal quotation marks and citation omitted). The Supreme Court of Virginia also recognizes the common-law principle of assumption of a duty, in that "[i]t is ancient learning that one who assumes to act, even though

4

gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Didato v. Strehler, 554 S.E.2d 42, 48 (Va. 2001) (quotation omitted). In Didato, the Supreme Court of Virginia, observed the "common law principle of assumption of duty embodied in the Restatement (Second) of Torts § 323":

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

554 S.E.2d at 48. In Nolde Bros. v. Wray, 266 S.E.2d 882, 884 (1980), the Supreme Court of Virginia considered a case where a driver allegedly gave a hand signal to another driver, who then turned across the path of traffic and was injured by an oncoming vehicle. The court explained that "most courts appear to hold" that under certain circumstances, a driver giving a hand signal to another driver, i.e. to turn or to pass, can constitute negligence, and that this holding is based on the principle of assumption of duty.[3] While the issue of whether a legal duty in tort exists is "a pure question of law," Yuzefovsky v. St. John's Wood Apts., 540 S.E.2d 134, 139 (Va. 2001) (quotation omitted), "[w]hen the issue is not whether the law recognizes a duty, but rather whether the defendant by his conduct assumed a duty, the existence of that duty is a question for the fact-finder." Burns v. Gagnon, 727 S.E.2d 634, 643 (Va. 2012). As explained in

---

[3] In Nolde Bros, Inc., the court found that a driver's alleged negligence in giving a hand signal should not have been submitted to the jury because, under the circumstances, "it could not have reasonably been interpreted as a signal to proceed across lanes of oncoming traffic." 266 S.E.2d at 884. To compare, in the instant case, plaintiff alleges that the employee defendants "requested that someone from Spencer's family seek assistance from the sawmill" even though they knew, due to their specialized training, that they needed to call a "professional salvage and towing company" with the proper equipment. Id. at ¶¶ 36–37, 41, 42. Releford and Parker then allegedly agreed to the plan for extracting the truck and participated in that effort; in these alleged actions, they have a duty to act with reasonable care.

Terry v. Irish Fleet, Inc., what this means is that "the court determines whether the law recognizes an assumed duty based on the facts alleged and the fact-finder determines whether plaintiff has proven those facts." 818 S.E.2d 788, 794 (Va. 2018).

Plaintiff's allegations of negligence here, including that employee defendants Releford and Parker agreed to and participated in the described efforts to extract their delivery truck, are sufficient to withstand the defendants' motion to dismiss. Likewise, regarding willful and wanton negligence, plaintiff's allegations withstand the motion to dismiss. Virginia law recognizes three levels of negligence, simple negligence, gross negligence, and willful and wanton negligence. Willful and wanton negligence involves "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Cowan v. Hospice Support Care, Inc., 603 S.E.2d 916, 919 (Va. 2004) (internal quotation marks omitted); see also Harris v. Harman, 486 S.E.2d 99, 102 (Va. 1997) (noting that "[w]hile each case must be resolved on its own facts, willful and wanton negligence generally involves some type of egregious conduct—conduct going beyond that which shocks fair-minded people").

Having considered the Complaint[4], the plaintiff has alleged sufficient facts to bring this action within the line of cases finding that "where a professional truck driver has 'received specialized safety training warning against the very omissions he made prior to the accident,' the Supreme Court of Virginia has held that the issues of willful and wanton negligence and corresponding punitive damages are for the jury." Paul v. W. Express Inc., No. 6:20-CV-00051,

---

[4] For example, the Complaint alleges that as professionals, Releford and Parker had "received specialized safety training regarding the proper action when their commercial vehicle became stuck or disabled" requiring them to call a professional salvage and towing company. Compl. ¶¶ 36–37.

6

2021 WL 1259446, at *4 (W.D. Va. Apr. 6, 2021) quoting <u>Alfonso v. Robinson</u>, 514 S.E.2d 615, 619 (Va. 1999). However, I emphasize that my decision is based solely on the allegations as stated in the Complaint and the ultimate determination of whether willful and wanton negligence is appropriate likely rests on facts still to be determined from discovery and depositions.

### III.     Conclusion

For the reasons stated in this Memorandum Opinion, the Motion to Dismiss is denied. An appropriate order will be entered.

Entered:  October 15, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge